UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

v.

DANIEL J. MOTHA,

                Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### I.   INTRODUCTION

1. The Commission brings this action against Defendant Daniel J. Motha ("Motha") for his role in a real estate investment scheme in violation of the anti-fraud provisions of the federal securities laws. From January 2018 through March 2023 (the "Relevant Period"), Motha and his business partner, Rishi Kapoor ("Kapoor"), raised approximately $93 million from more than 50 investors to fund their real estate development companies, Location Ventures, LLC ("Location Ventures" or the "Company") and URBIN, LLC ("URBIN"), and their respective real estate development projects (collectively, the "Corporate Entities").

2. In December 2023, the Commission filed an action against Kapoor, Location Ventures, URBIN, and 20 related entities in connection with the fraud and obtained an order appointing a receiver over the Corporate Entities.[1]

---

[1] *See SEC v. Rishi Kapoor, et al.*, Case No. 9:23-cv-24903-JB (S.D. Fla. Dec. 27, 2023).

1

3. Location Ventures purported to be a real estate company that invested in the development of single-family homes, condominiums, and mixed-use properties in South Florida. URBIN was an affiliate of Location Ventures that invested in the development of communal live/work concept properties located in, as its name suggests, urban neighborhoods.

4. Location Ventures and URBIN earned revenue from fees they charged their real estate projects, including acquisition, development, management, marketing, and loan guarantor fees. They also owned a stake in each of their projects, which entitled them and their investors to a percentage of any profits made by the projects. Importantly, Location Ventures owned 40% of URBIN, resulting in a multi-level corporate structure with a percentage of the profits at each level flowing to Location Ventures at the top.

5. While Kapoor, Location Ventures' Chief Executive Officer, is credited on the Company's website with founding Location Ventures, Motha partnered with Kapoor shortly after the Company was created. In addition to being named a "Partner" with an equity interest in the Company, Motha was Location Ventures' Chief Financial Officer ("CFO"), President of the Multifamily Division, and a member of the board of directors (the "Board").

6. To fund the venture, Motha and Kapoor offered passive investment opportunities in both Location Ventures and URBIN, as well as in each of their respective projects. To induce investors, Motha and Kapoor claimed they made a $13 million cash investment in Location Ventures through Patriots United, LLC ("Patriots United"), a company owned by Motha, Kapoor, and members of Kapoor's family. At no point during the Relevant Period, however, did Patriots United contribute any cash to Location Ventures.

7. Motha and Kapoor's false claim about their investment was just one in a series of material misrepresentations and omissions made to investors. For instance, Motha and Kapoor

represented to investors that Location Ventures, URBIN, and each of the projects were separate and distinct investments, possessing their own members, designated capital, and corporate identities. In fact, Motha and Kapoor regularly ignored corporate formalities and commingled investor funds with more than $60 million in intercompany transfers occurring during the Relevant Period. As just a few examples: $1.6 million of investor funds in the URBIN Grove project were transferred to and used by the URBIN Gables project to purchase land. Approximately $4.5 million of customer sales deposits, paid by purchasers of units in the URBIN Grove and URBIN Miami Beach projects were released from escrow and used for purposes unrelated to the construction of those projects. And approximately $14 million was transferred from Location Ventures to URBIN and recorded internally as an intercompany loan without member or Board approval.

8. As CFO, Motha was integral to the scheme. Motha was one of only two employees (Kapoor being the other) authorized to transfer funds to/from the various accounts. And until at least August 2022, Motha was responsible for maintaining the Corporate Entities' books and records, which were used to provide false and misleading information to investors.

9. As investor money was shuffled among the various companies and accounts, Motha and other insiders misappropriated at least $6 million of investor funds—$1 million of which Motha misappropriated for himself.

10. By engaging in the conduct alleged in this Complaint, Motha violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule l0b-5 [7 C.F.R. § 240.10b-5].

11. The Commission is seeking permanent injunctions, disgorgement of ill-gotten gains with prejudgment interest, and a civil monetary penalty against Motha. The Commission also seeks an order against Motha imposing an officer and director bar.

## II. DEFENDANT

12. **Motha** is a resident of Miami, Florida. From as early as January 2016 through July 2023, Motha was a Partner of Location Ventures. From as early as January 2016 until August 2022, Motha served as the CFO of Location Ventures. From approximately August 2022 until July 2023, Motha served as President of Location Ventures' Multifamily Division. From approximately January 2020 through July 2023, Motha served as a member of Location Ventures' board of directors. According to his biography on Location Ventures' website, Motha received a business degree in accounting and finance from the University of Miami. Motha is not a licensed accountant.

## III. JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

14. This Court has personal jurisdiction over Motha and venue is proper in the Southern District of Florida because Motha resides in the District and a substantial part of the events or omissions giving rise to the violations of the Securities Act and the Exchange Act occurred in the District.

15. In connection with the conduct alleged in the Complaint, Motha, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate

commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## IV. FACTUAL ALLEGATIONS

### A. The Real Estate Investment Scheme

16. Location Ventures was a real estate development and investment company that Kapoor started in or around January 2016 to develop new luxury single-family homes, multi-family redevelopment projects, and boutique condominiums. While Kapoor is credited on the Company's website with founding Location Ventures, Motha partnered with Kapoor shortly after the Company was created.

17. In May 2018, Kapoor and others formed URBIN, an affiliate of Location Ventures, to develop communal live/work properties in Miami Beach, Coral Gables, and Miami's Coconut Grove neighborhood, with plans to expand into Fort Lauderdale and cities nationwide.

18. Location Ventures and URBIN essentially were two distinct brands. Location Ventures fit squarely in South Florida's luxury real estate market, while URBIN targeted young professionals desiring to live and work in city centers and urban neighborhoods.

19. From approximately January 2018 until at least March 2023, Motha and Kapoor offered investors passive real estate investments opportunities in Location Ventures, URBIN, and their respective portfolios of real estate projects.

20. Prospective investors could invest at the "company level" by purchasing membership units in Location Ventures and/or URBIN, which earned revenue from fees they charged their real estate projects, including acquisition, development, management, marketing, and loan guarantor fees. In addition to earning fees, Location Ventures and URBIN owned an

interest in each of their projects, such that an investment in Location Ventures or URBIN was an indirect investment in their respective projects.

21. Prospective investors also could invest at the "project level" by purchasing membership units directly in the companies created to own specific projects, which would pay investors upon the completion or sale of the projects, assuming they were profitable.

22. Location Ventures owned 40% of URBIN, placing investors in Location Ventures at the top of a multi-level corporate structure with a percentage of the profits at each level flowing to the top, as shown in Location Ventures' organization chart below.

*Figure 1 - Location Ventures' Organizational Chart*



23. Motha and Kapoor used each of the Corporate Entities in the scheme to defraud investors, including: the operational entities (shaded in green) to operate the scheme and funnel investor funds; the manager entities (shaded in yellow) to manage and control the projects used in the scheme; and the project entities (shaded in blue and grey) to raised money from investors, and misappropriate and misuse investor funds.

24. From as early as January 2018 to March 2023, Motha and Kapoor raised at least $93 million from more than 50 external investors.

25. The membership units sold to investors constitute investment contracts and are, therefore, securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946) and its progeny. With respect to these investments, there was (a) an investment of money; (b) in a common enterprise; (c) based on the expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *See SEC v. Friendly Power Co., LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999).

B. **Motha's Material Misrepresentations, Omissions, and Role in the Scheme**

26. Along with Kapoor, Motha solicited investors through in-person and virtual investor presentations, as well as by telephone, email, and through Location Ventures' website. Investors were provided with materials that typically included an offering memorandum with information regarding the projects, a sponsor resume with information regarding Location Ventures, as well as the operating agreements and *pro forma* budgets for their preferred investment. The operating agreements and budgets not only contained the terms upon which prospective investors agreed to invest but made a series of representations regarding capitalization, expenses, corporate governance, use of investor funds, among many others.

### (i) Patriot United's $13 Million Cash Capital Contribution

27. To induce prospective investors to invest, Motha and Kapoor represented that they made an initial $13 million cash investment in Location Ventures through Patriots United. Motha and Kapoor each owned an equal 45.05% membership interest in Patriots United for a total 90.1% membership interest. The remaining 9.9% was owned by an entity belonging to Kapoor and two of his family members.

28. By representing that they contributed their own capital, Motha and Kapoor not only gained the confidence of prospective investors, many of whom were high-wealth individuals, but also received a 47.917% membership interest in Location Ventures and, combined with the interest held by other insiders, effective control over the company. Location Ventures then used the capital it raised, including Patriots United's purported $13 million, to purchase membership units in Location Ventures' projects and in URBIN.

29. For example, on January 17, 2020, Motha and Kapoor sent nine prospective investors a copy of Location Ventures' operating agreement as part of an offering of securities. Section 4.1 of the operating agreement explicitly states that existing members "… have made the contributions of capital to the Company in cash … described in Exhibit A." Exhibit A to the operating agreement is a Schedule of Members that includes Patriots United and represents that it made an initial capital contribution in the amount of $13 million. Directly below the Schedule of Members includes the statement: "All Initial Capital Contributions are in cash."

30. Despite Motha and Kapoor's representations to investors, Patriots United never contributed any cash to Location Ventures.

31. After certain Location Ventures' investors raised questions regarding the source of the $13 million contribution, Motha and Kapoor provided these investors with a "rollup" analysis,

including financial statements for URBIN and five ongoing projects that were contributed to Location Ventures after the Company was formed, to demonstrate Patriot United's purported $13 million contribution.

32. While not a contribution of cash as represented in the operating agreement, the analysis represented that Patriots United's $13 million capital contribution was comprised of cash previously invested in URBIN and the five projects. Included in the analysis, however, were amounts that were never contributed, amounts that were "committed" but not yet contributed, and funds held in commingled accounts containing other investor funds.

33. Only approximately $4.495 million of cash was contributed to URBIN and the five ongoing projects rolled up into Location Ventures. This amount, even assuming it qualifies as a direct cash contribution to Location Ventures, fell far short of the $13 million represented to investors.

### (ii) Actions Taken Without Board Approval

34. Location Ventures' operating agreement stated its Board, which consisted of seven members including Motha, had sole authority to make certain decisions regarding Location Ventures and its projects, including, but not limited to: (i) any acquisition, financing, construction, mortgaging and other aspects of the development and operation of any project; (ii) Location Ventures' participation in any project; and (iii) the determination of the amount and timing of distributions by Location Ventures.

35. On multiple occasions, however, Motha and Kapoor made decisions that should have been decided by the Board. For example, in violation of Location Ventures' operating agreement, Motha and Kapoor made distributions to themselves without Board approval as set forth in Section IV.C. below.

36. Kapoor also directed that Location Ventures provide approximately $14 million in loans to URBIN without Board or investor approval. These loans were reflected on Location Ventures' balance sheets, which Motha oversaw and approved.

### (iii)   *Audited Financial Statements and 2021 Approved Budget*

37. Location Ventures represented in its operating agreement that investors would receive audited financial statements on an annual basis. Neither Kapoor nor Motha, as its CFO, retained a certified public accountant to conduct an audit, and investors were never provided with audited financial statements.

38. Motha knew this representation was false when made because each year it was represented to new investors they would receive audited financial statements despite failing to provide existing investors with audited financial statements for years prior.

39. Location Ventures also represented to investors in its operating agreement that the Board had to approve deviations that exceeded 7.5% of the approved budget. However, neither Kapoor nor Motha sought Board approval when Location Ventures' actual expenses were 68% higher and exceeded the 7.5% threshold for the 2021 annual budget. Motha, as Location Ventures' CFO, oversaw its books and records, which reflected the budget overrun.

### (iv)   *Commingling of Investor Funds*

40. Kapoor and Motha also represented to investors that Location Ventures, URBIN, and each of their projects were separate and distinct entities, with their own members, budgets, and corresponding capital, and that investor funds would be used solely for their intended project or projects. Kapoor and Motha, however, regularly commingled investor funds among the various Corporate Entities, with more than $60 million of intercompany transfers during the Relevant Period.

41. For instance, Location Ventures received approximately $14.7 million from the URBIN entities, and the URBIN entities received $25.2 million from the Location Ventures entities, including a $14 million transfer from Location Ventures to URBIN that was recorded internally as an intercompany loan. Kapoor and Motha caused the loan to be made without 75% member approval as required by Location Ventures' operating agreement.

42. Also, it was not uncommon for Kapoor to direct the use of investor funds from one project to pay for the expenses of another, which Motha helped execute as CFO. For example, on January 3, 2022, URBIN Grove received $4.2 million from Investor 14,[2] and on January 4, 2022, $1 million from Investor 49. The balance in URBIN Grove's bank account prior to receiving these funds was $68,000. Between January 4, 2022, and January 6, 2022, URBIN Grove transferred $1,847,000 to URBIN, of which URBIN transferred $1.69 million to URBIN Gables, which URBIN Gables used to purchase the "Minorca Parking Lots." Motha recorded the purchase of the parking lots as a land asset on URBIN Gables balance sheet.

C. **Motha's Misappropriation of Investor Funds**

43. From July 2021 through August 2022, Motha misappropriated money in the form of distributions and fees he was not entitled to. In total, Motha misappropriated approximately $1 million.

44. For example, on or around July 18, 2021, Motha received a capital distribution in the amount of $562,192.67 in connection with the sale of a project known as Leucandendra. Motha's distribution was based on his purported ownership interest in Location Ventures. As

---

[2] The names of investors have been replaced with numbers to protect their identities. A key associating the assigned numbers with investors names will be provided to the Court *in camera* upon request.

Patriots United did not contribute any cash to Location Ventures, Motha was not entitled to the distribution.

45. Motha also received acquisition and loan guarantor fees in the amount of $432,000 that should have been paid directly to Location Ventures and, in some cases, exceeded the amounts authorized under the relevant operating agreements.

D. **Buy Out of Major Investor**

46. Sometime in 2022, a major investor in Location Ventures and three of its projects, referred to herein as "Investor 20," became concerned regarding the management of Location Ventures and its projects, including the misappropriation and misuse of investor funds, and demanded that Location Ventures buy out the entirety of its interest. In December 2022, Location Ventures paid Investor 20[3] $3 million to purchase its interest in the Location Ventures project Redlands Phase 1, LLC ("Redlands"). The source of these funds was a combination of Investor 30's capital contribution in Location Ventures and funds belonging to the URBIN Grove project and its members.

47. Shortly after the Redlands buyout, Kapoor and Motha met with Investor 20 in person to discuss the details of a Global Interest Purchase Agreement (the "Buyout Agreement"), which was entered into on December 31, 2022. The Buyout Agreement, signed by Location Ventures, Kapoor, and Motha, along with certain other related entities, required Location Ventures to purchase Investor 20's interest in Location Ventures and the two remaining projects for approximately $41 million, to be paid in installments over a five-month period. The first installment required a payment of $2 million and was due on January 13, 2023. To meet this

---

[3] The payment was made to Investor 80, which is owned by or related to Investor 20.

installment payment, Location Ventures received $2.5 million from Investor 46 on January 13, 2023, and immediately transferred $2 million of those funds to Investor 20.

48. Location Ventures made the following payments under the Buyout Agreement:

    a. January 13, 2023, payment of $2 million;

    b. January 31, 2023, payment of $2,378,630;

    c. February 15, 2023, payment of $2.5 million;

    d. February 28, 2023, payment of $2.5 million; and

    e. March 13, 2023, payment of $5 million.

49. In addition to the above-scheduled payments, Location Ventures paid Investor 20 a $500,000 extension fee, and a partial payment in the amount of $1.5 million under the Buyout Agreement for a total of $16,378,630. Together with Location Ventures' payment to Investor 20 related to the Redlands project, the total amount paid to Investor 20 and its related entities was $19,378,630.

50. Kapoor and Motha entered into the Buyout Agreement and transferred the funds to Investor 20 without obtaining member or Board approval, and used investor funds intended for other projects without their knowledge or consent in attempt to satisfy their obligations under the Buyout Agreement.

51. After making these payments to Investor 20 under the Buyout Agreement, Location Ventures funds were exhausted.

52. In December 2023, the Commission filed an action against Kapoor, Location Ventures, URBIN, and 20 related entities in connection with the fraud. As part of its action, the Commission obtained an order appointing a receiver over the Corporate Entities. Those Corporate Entities remain in receivership as of the date of this Complaint.

## V.     CLAIMS FOR RELIEF

### COUNT I

### Violations of Section 17(a)(1) of the Securities Act

53.     The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

54.     From approximately January 2018 until at least March 2023, Motha, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

55.     By reason of the foregoing, Motha, directly or indirectly, has violated and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II

### Violations of Section 17(a)(2) of the Securities Act

56.     The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

57.     From approximately January 2018 until at least March 2023, Motha, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     By reason of the foregoing, Motha, directly and indirectly, has violated and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act

59. The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

60. From approximately January 2018 until at least March 2023, Motha, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

61. By reason of the foregoing, Motha, directly and indirectly, has violated and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a)

62. The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

63. From approximately January 2018 until at least March 2023, Motha, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

64. By reason of the foregoing, Motha, directly and indirectly, has violated and unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)] thereunder.

## COUNT V

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)

65. The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

66. From approximately January 2018 until at least March 2023, Motha, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67. By reason of the foregoing, Motha, directly and indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

## COUNT VI

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(c)

68. The Commission repeats and realleges Paragraphs 1 through 52 of this Complaint.

69. From approximately January 2018 until at least March 2023, Motha, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

70. By reason of the foregoing, Motha, directly and indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)] thereunder.

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find Motha committed the violations alleged, and:

### A. Permanent Injunctions

Issue Permanent Injunctions enjoining Motha and his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### B. Disgorgement and Prejudgment Interest

Issue an order directing Motha and his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### C. Civil Monetary Penalty

Issue an Order directing Motha to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### D. Officer and Director Bar Against Motha

Issue an Order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], permanently prohibiting Motha from acting as an officer or director of any issuer whose securities are registered with the Commission pursuant to Section 12 of the Exchange Act or which is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

### E. Further Relief

Grant such other and further relief as may be necessary and appropriate.

### F. Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over Motha in order to implement and carry out the terms of all orders that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII. DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated:  April 25, 2025			Respectfully submitted,


By: /s/Russell R. O'Brien
Russell R. O'Brien
Trial Counsel
Fla. Bar No.  084542
Direct Dial: (305) 982-6341
Email:  obrienru@sec.gov
*Lead Attorney*
*Attorney To Be Noticed*

Jordan A. Cortez, Esq.
Senior Counsel
Special Bar No. A5502524
Direct Dial:  (305) 982-6355
Email: cortezjo@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone:  (305) 982-6300
Facsimile:   (305) 536-4154